UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| **WACKO'S TOO, INC.**, a Florida, corporation doing business as "Wackos", **MHHS-SINSATIONS, LLC**, a Florida limited liability company doing business as "Sinsations", **PATMILT, INC.,** a Florida corporation doing business as "Passions", **BARE ASSETS, INC.,** a Florida corporation, **EMPERORS, INC.**, a Florida corporation doing business as "EMPEROR'S **WHITES PLACE LLC**, a Florida limited liability company doing business as "Gold Club Jacksonville", **MT PRODUCTIONS, INC.**, a Florida corporation doing business as "Thee Officers Club", **HORTON ENTERPRISES, INC.,** a Florida corporation doing business as "The New Solid Gold", **NEVA CLINKSCALE**, an individual, **TIFFANY TYRRELL**, an individual, **ALEXZANDRIA PELLITTERI-ALLEN**, an individual, and **CHELSEY LAMON**, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.: |
| Plaintiffs, | ) ) |  |
| vs. | ) ) |  |
| **CITY OF JACKSONVILLE**, a Florida municipal corporation, | ) ) ) |  |
| Defendant. | ) ) |  |
| _____/ |  |  |

# **COMPLAINT FOR DECLARATORY JUDGMENT**
# **AND PERMANENT INJUNCTION**

Plaintiffs bring this suit pursuant to 42 U.S.C. §1983, seeking a judgment declaring that certain provisions of Jacksonville Ordinance 2022-172-E violate the First and Fourteenth Amendments on their face and as applied to these Plaintiffs. Plaintiffs further pray for issuance of an injunction against that unconstitutional Ordinance.

## **JURISDICTION**

1.      This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution and under 28 U.S.C. §1343(4) to secure equitable relief or other relief for the protection of civil rights.

3.      The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367

5.      The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

6.      This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiffs' rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

7.      This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain policies and practices of the Defendant. There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendant's actions taken under color and authority of "state" law

and procedures, in violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

## VENUE

8.      Venue is proper in the Middle District of Florida, Jacksonville Division, since the laws and policies complained of are those of Jacksonville, Florida, which is within the district and geographical area assigned to the Jacksonville Division.

## <u>PARTIES</u>

9.      Plaintiff, WACKO'S TOO, INC. is a Florida corporation which operates a Dancing Entertainment Establishment known as "Wacko's" at 3701 Emerson Street, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

10.     Plaintiff, MHHS-SINSATIONS, LLC, is a Florida corporation which operates an Adult Entertainment Establishment known as "Sinsations" at 2560 Emerson Street, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

11.     Plaintiff, PATMILT, INC., is a Florida corporation which operates a Dancing Entertainment Establishment known as "Passions" at 9801 Beach Boulevard, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

12.     Plaintiff, BARE ASSETS, INC., is a Florida corporation which operates a Dancing Entertainment Establishment by that name at 10749 North Main Street, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

13.     Plaintiff, EMPERORS, INC., is a Florida corporation which operates a Dancing Entertainment Establishment  known as "Emperor's Gentleman's Club" at 4923 University Boulevard, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

14.     Plaintiff, WHITES PLACE LLC, is a Florida limited liability company which operates a Dancing Entertainment Establishment known as "Gold Club Jacksonville" at 320 General Doolittle Drive, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

15.     Plaintiff, MT PRODUCTIONS, INC., is a Florida corporation which operates a Dancing Entertainment Establishment known as "Thee Officers Club" at 657 Wonderwood Drive, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

16.     Plaintiff, HORTON ENTERPRISES, INC., is a Florida corporation which operates a Dancing Entertainment Establishment known as "The New Solid Gold" at 7175 Blanding Boulevard, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

17.    Plaintiff, NEVA CLINKSCALE (hereinafter "CLINKSCALE"), is an individual, *sui juris*, residing within Duval County, Florida. At all times material hereto, CLINKSCALE has been a performer at Emperor's, a Dancing Entertainment Establishment which serves alcohol. CLINKSCALE is over the age of twenty-one.

18.    Plaintiff, TIFFANY TYRRELL (hereinafter "TYRRELL"), is an individual, *sui juris*, residing within Duval County, Florida. At all times material hereto, TYRRELL has been a performer at Emperor's, a Dancing Entertainment Establishment which serves alcohol. TYRRELL is over the age of twenty-one.

19.    Plaintiff, ALEXZANDRIA PELLITTERI-ALLEN (hereinafter "ALLEN"), is an individual, *sui juris*, residing within Duval County, Florida. At all times material hereto, ALLEN has been a performer at Emperor's, a Dancing Entertainment Establishment which serves alcohol. ALLEN is twenty years of age and is subject to the ban on performers under the age of twenty-one.

20.    Plaintiff, CHELSEY LAMON (hereinafter "LAMON"), is an individual, *sui juris*, residing within Duval County, Florida. At all times material hereto, LAMON has been a performer at Wacko's, a Dancing Entertainment Establishment which serves alcohol. LAMON is over the age of twenty-one.

21.    Defendant, CITY OF JACKSONVILLE ("JACKSONVILLE"), is a Florida consolidated municipal corporation, organized and operating under the laws of the State of Florida.

## COLOR OF STATE LAW

22.    As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, JACKSONVILLE and its agents, were, and are, acting under color of state law and authority.

## FACTS RELATIVE TO PLAINTIFFS' PERFORMANCES

23.    Those Plaintiffs identified as "Dancing Entertainment Establishments" (*i.e.* Wacko's, Passions, Bare Assets, Emperor's, Gold Club, Thee Officers Club, and The New Solid Gold) operate "gentlemen's clubs" or cabarets which feature live exotic dance performances in an alcoholic beverage establishment within the City limits of Jacksonville, Florida.

24.    Performers at Dancing Entertainment Establishments wear coverings over their breasts, buttocks and pubic region. The dancers perform choreographed routines to a wide variety of music which varies somewhat between the clubs. The format may generally be described as a "bikini bar".

25.    Those   Plaintiffs   which   operate   "Dancing   Entertainment Establishments" are regulated as Dancing Entertainment Establishments pursuant to Chapter 151 of the Jacksonville Code.

26.    Sinsations owns and operates a nude dancing establishment within the City limits of Jacksonville, Florida. Sinsations does not serve alcoholic beverage and may generally be described as a "juice bar" featuring nude dance performances.

27.     Sinsations is regulated as an "Adult Entertainment Establishment" pursuant to Chapter 150 of the Jacksonville Code.

28.     Those Plaintiffs which operate either an Adult Entertainment Establishment or a Dancing Entertainment Establishment are collectively referred to as the "Club Plaintiffs".

29.     CLINKSCALE, TYRRELL, ALLEN and LAMON are professional entertainers who regularly perform at business operated by the Club Plaintiffs. The four entertainers are collectively referred to as the "Individual Plaintiffs".

30.     As with similar performers around the country, the Individual Plaintiffs earn their living through their art while providing entertainment for the benefit and enjoyment of their patrons.

31.     Plaintiffs maintain that the human body is a thing of beauty which, when combined with music and rhythmic motion in the form of dance, conveys an important message of eroticism. Plaintiffs believe that providing this form of expressive communication to the public is a beneficial social activity which enhances individuals' conscious ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree. Plaintiffs further believe that this expression enhances the appreciation of the human body, with an emphasis on the consideration of popular contemporary concepts of physical attractiveness and the stimulating and

entertaining aspects of same, which are clear characteristics of a normal and healthy interest in human sexuality.

32.     The expression offered by Plaintiffs is not intended to be, nor is it, obscene as contemplated by contemporary community standards. Plaintiffs do not intend this expression to appeal to any prurient interest. These performances are presumptively protected by the First Amendment to the Constitution of the United States. Plaintiffs have a clear legal right to engage in protected speech of this nature.

33.     This expressive activity is performed before a consensual audience, all over the age of 18 years, desirous of receiving and enjoying the message conveyed by the entertainer of normal human sexual interest and sensual subtleties.

**<u>OVERVIEW OF PRIOR ORDINANCE AND LITIGATION</u>**

34.     The City of Jacksonville regulates exotic dance establishments through Chapters 150 and 151 of the Jacksonville Code. Chapter 150 primarily regulates nude dance facilities such as Sinsations, while Chapter 151 regulates bikini bars like the other Club Plaintiffs.

35.     In 2020, the City first implemented a licensing program which required all exotic dancers at adult entertainment establishments and adult dancing establishments to obtain a license from the City before engaging in First Amendment protected dance performances.

36.     The new provisions were adopted as Ordinance 2020-74-E. The requirement for a "Work Identification Card" was codified as §§150.224 and 151.214 of the Jacksonville Code of Ordinances:

Sec. 150.224. Performer work identification card.

(a)     Performer Work Identification Card required. Any person desiring to perform in an adult entertainment establishment licensed under this Chapter must obtain a Work Identification Card from the Sheriff. No person shall act as a performer in a dancing entertainment establishment without having previously obtained said Work Identification Card, except as permitted during the Grace Period as set forth in this section.

Sec. 151.214. Performer work identification card.

(a)     Performer Work Identification Card required. Any person desiring to perform in a dancing entertainment establishment licensed under this Chapter must obtain a Work Identification Card from the Sheriff. No person shall act as a performer in a dancing entertainment establishment without having previously obtained said Work Identification Card, except as permitted during the Grace Period as set forth in this section.

37.     In conjunction with the licensing requirement, the City banned exotic dancer performers under the age of twenty-one. The ban was codified as sections 150.224(c) and 151.214(c):

(c)   Application for Work Identification Card. … Each applicant must submit proof of identity and proof that applicant is at least twenty

one (21) years of age. Work Identification Cards shall not be issued to any person under the age of twenty one. [1]

38.     The exotic dancer licensing ordinance (Ordinance 2020-74-E) was challenged along with other provisions of the Jacksonville Adult Entertainment Code (Chapters 150 and 151 of the Jacksonville Code) in two Federal cases: Wacko's Too, Inc., et al v. City of Jacksonville, Case No.: 3:20-cv-303-TJC-MCR (M.D. Fla.) and Emperors, Inc., et al v. City of Jacksonville, Case No.: 3:19-cv-01110-TJC-MCR (M.D. Fla.).

39.     The parties in those cases entered into a "stand still agreement" with the City whereby the City agreed that it would not enforce the licensing provisions until such time as the Court ruled on the legal challenges to the law. (Doc. 19 at 2; Doc. 21 at 3 [Wacko's Too]).

40.     On March 1, 2021, this Court entered its Final Order finding that the core elements of the dancer licensing ordinance were unconstitutional. In particular, the Court found that the ordinance granted the Sheriff too much discretion and did not guarantee a decision within a brief specified period of time. (Doc. 39 at 11-21

---

[1] Technically, the Ordinance did not directly ban performers who are under twenty-one. Rather, the Ordinance requires a Work Identification Card for all performers and prohibits the issuance of the Card to anyone under the age of twenty-one. Because persons under twenty-one cannot obtain the requisite Card, they are effectively prohibited from performing in Jacksonville.

[Wacko's Too]); *See*, Wacko's Too, Inc. v. City of Jacksonville, 522 F. Supp. 3d 1132 (M.D. Fla. 2021).[2]

41.     As a result of that decision, §§150.224 and 151.214 never went into effect, performers were not required to obtain work identification cards and exotic dancers under the age of twenty-one continued to perform.

42.     The Court reserved ruling on the constitutionality of the under twenty-one ban (§§150.224(c) and 151.214(c)) and has not made a decision as of the date of filing this Complaint. (Doc. 39 at 27-29 [Wacko's Too]).

## THE NEW DANCER LICENSING LAW

43.     The City made substantial amendments to its exotic dancer licensing provisions which were enacted on April 26, 2022, as Ordinance 2022-172-E. A copy of Ordinance 2022-172-E (the "Ordinance") is attached as Exhibit "1" to this Complaint.

44.     The Ordinance includes a "Grace Period" which provides that the Work Identification Card is not required until 90 days after the "effective date of this

---

[2] The Court also found that other elements of the permitting provisions were unlawful, including the requirement that performers furnish their fingerprints and provide proof of citizenship. (Doc. 39 at 21-26 [Wacko's Too]). Other provisions associated with the application process, including the "under twenty-one" ban and the requirement that performers take a human trafficking course were reserved for trial. Id. The Court's ruling also resolved a number of other constitutional claims not at issue in this litigation.

section". §§150.224(c) and 151.214(c).

45.     A detective from the Jacksonville Sheriff's Office went to all of the City's adult dancing facilities during the week of July 4th and advised the owners and managers that the Grace Period would expire shortly and that all of the performers would be required to apply for and receive a Work Identification Card.

46.     The detective gave the Club owners and managers the application which the performers are expected to fill out to obtain their Work Identification Card. A copy of the application form is attached as Exhibit "2" to this Complaint.

47.     The Ordinance restores the requirement that exotic dance performers apply for and obtain a "Work Identification Card". *See*, §§150.224(a) and 151.214(a). The Work Identification Card is a prior restraint because an exotic dancer cannot perform without the Card.

48.     While the Ordinance makes substantial changes to the original exotic dancer licensing provisions, the amendments do not correct all of the constitutional defects in the original Code and creates several new defects not found in the prior version.

49.     In general, the Ordinance continues to impose an unconstitutional prior restraint on protected speech because it vests too much discretion in the permitting official (the Sheriff); it takes too long to process a license; the time it takes to approve

a license is uncertain and indefinite; and the Ordinance fails to preserve the *status quo* pending judicial review.

50.    The Ordinance allows the Sheriff the unfettered discretion to deny a Work Identification Card based on his subjective determination that the "proof submitted" is "not satisfactory":

> Sec. 150.224.   Performer work identification card.
> …
>
> (f)     Issuance of Work Identification Card.
>
> …   Should the Sheriff determine that the proof submitted with the application for the Work Identification Card as required hereinabove is not satisfactory or full payment of the application fee is not received, the Sheriff shall deny issuance of the said Work Identification Card and shall provide written notification to the applicant stating the reason(s) for any such denial.

The same provision is incorporated into §151.214(f).

B.    The fourteen day period for evaluation of a license application before issuance of a Work Identification Card is unreasonably long:

> … The Sheriff shall approve or deny an application within fourteen (14) days of receipt of a completed application and payment of the applicable fee. If the Sheriff fails to approve or deny an application within the 14-day time limit, the application shall be deemed granted and the applicant can continue to rely on his or her receipt or check copy as a substitute for the Work Identification Card to legally perform or can request the Sheriff to issue an official card.

See, §§150.224(f) and 151.214(f). That time period is unreasonably long because the qualifications for obtaining a license are minimal and the Sheriff's review is limited. Plaintiffs allege the following particulars:

A.    The Sheriff is tasked with only a limited number of responsibilities in connection with a license application. Most of those tasks are accomplished at the time the performer submits her application, at which time the Sheriff must verify "proof of identity" [§§150.224(c) and 151.214(c)]; must ensure that the application is truthful and complete [§§150.224 (c),(d) and §§151.214(c), (d)]; must verify that the performer took the required human trafficking course [§§150.224(c) and 151.214(c)]; and must take the applicant's photograph [§§150.224(f) and 151.214(f)].

B.    The only item which requires research is the verification that the performer has not committed a "human trafficking-related charge" or one of the crimes listed in §§150.224(l) and 151.214(l). That research is typically conducted electronically via the National Crime Information Center (NCIC) database and can be completed in a matter of minutes.

51.    The issuance of a temporary permit does not relieve the Sheriff of his obligation to issue a license within a specified brief period of time:

> Does it matter that an applicant may begin operating while the board is still considering its application? We think not. The ordinance only permits applicants to operate conditionally. Once the board denies an

application for an exception, the applicant must close its doors. A
conditional exception is no exception at all. A business can scarcely
afford to operate in limbo, not knowing whether the City will shut it
down the next day or not. Further, Freedman's requirement that the
status quo be maintained while public officials are deciding does not
eliminate the requirement that the decision itself must be prompt.

Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1363 (11th Cir. 1999).

52.     While the Ordinance nominally allows a performer to dance without a

Work Identification Card while her application is pending or in the event the Sheriff

fails to make a licensing decision [§§150.224(c), (e) and (f) and §§151.214(c), (e)

and (f)], the Club Plaintiffs are prohibited from allowing her to perform without an

actual Work Identification Card. Plaintiffs allege the following particulars:

A.     The requirement that all performers obtain a Work Identification Card

is enforced in two different ways: (1) the performer is not permitted to dance without

a Card; and (2) a Club Plaintiff is not permitted to allow a performer to dance unless

she has tendered her Card. The operative language appears at §§150.224(a) and

151.214(a):

Sec. 150.224. Performer work identification card.

(a)     Performer Work Identification Card required. Any person
desiring to perform in an adult entertainment establishment licensed
under this Chapter must obtain a Work Identification Card from the
Sheriff. No person shall act as a performer in an adult entertainment
establishment without having previously obtained said Work
Identification Card, except as permitted during the Grace Period as set
forth in this section. Additionally, no license holder or establishment
manager shall employ, contract with or otherwise allow any performer

Page 17

to perform in an adult entertainment establishment who does not possess a valid and effective Work Identification Card except as permitted during the Grace Period as set forth in this section. Establishment managers shall be required to review all Performer Rosters at the commencement of his or her shift to verify compliance with this section.

B.     The Ordinance imposes a civil penalty against the performer, the Club, or both if a performer dances without having obtained a Work Identification Card:

(b)     Penalty.    Violations of this section shall be a civil infraction. Any performer, license holder, owner, operator or manager who violates or knowingly permits a violation of this section shall be assessed a civil penalty of $200.

§§150.224(l) and 151.214(l).

C.     The Ordinance contemplates that a performer can utilize a receipt or copy of her check for payment of the license fee[3] until such time as the Sheriff issues her an actual Work Identification Card (or indefinitely, if the Sheriff fails to issue a Card within the nominal 14 day period). There are several references to the ability to make use of the check as a temporary license scattered throughout the Code, but the primary entitlement appears at §§150.224(e) and 151.214(e):

A copy of the check, or of a receipt issued by the Sheriff, showing payment for an application or duplicate card shall operate as a receipt

---

[3]  The Ordinance does not actually require the Sheriff to issue a receipt to the applicant. The Ordinance does not specify how the applicant is to obtain a copy of the check submitted; whether the Sheriff is to provide a copy, whether the applicant must make one before submitting the check or whether the applicant has to wait for the check to clear so that she can obtain a copy from the bank.

for said fees and shall allow the applicant to perform pending receipt of the official Work Identification Card.

D.     The Ordinance does **not** permit the Club Plaintiffs to rely on the performer's check / temporary license. Instead, the provisions governing Club Plaintiffs speak explicitly in terms of the actual Work Identification Card. The disconnect between the nominal grant of a temporary permit and the requirement for an actual Work Authorization Card arises from two provisions of the Ordinance:

> (a)     Performer Work Identification Card required. … Additionally, no license holder or establishment manager shall employ, contract with or otherwise allow any performer to perform in an adult entertainment establishment who does not possess a valid and effective Work Identification Card except as permitted during the Grace Period as set forth in this section.

§§150.224(a) and 151.214(a).

> (g)  Retention of Performer Roster and Work Identification Card.

> The adult entertainment establishment shall also maintain a Work Identification Card file, organized alphabetically by performer's last name, with legible photocopies of the Work Identification Card of each performer performing at said establishment for a period of two (2) years from each performer's most recent performance date. Other than performers performing during the Grace Period established in this section, no performer shall perform until the performer roster is updated to include the performer information, **and the legible photocopy of the Work Identification Card is placed on file as required herein.** (Emphasis added).

§§150.224(g) and 151.214(g).

E.     The City may have intended for the Club Plaintiffs to be able to rely on the performer's check / temporary license in lieu of an actual Work Identification Card, but that is not what the Ordinance says. A Club Plaintiff cannot comply with §§150.224(a) and 151.214(a) or §§150.224(g) and 151.214(g) unless they have been provided a copy of an actual Work Identification Card and placed that "on file".

F.     Because the Club Plaintiffs are prohibited from allowing a performer to dance without an actual Work Identification Card, the performer's temporary license is worthless; no Club will risk a substantial fine by allowing her to dance without a Card.

G.     The failure to allow a performer the guaranteed right to engage in speech through dance if the permitting decision is not made within a specified, brief period of time makes this permitting scheme an unconstitutional prior restraint.

53.     The Ordinance does not preserve the *status quo* pending judicial review for performers, such the Individual Plaintiffs, who are currently performing. Rather, the Sheriff, an administrative official, is authorized to impose a prior restraint and prevent performers from dancing. Plaintiffs allege the following particulars:

A.     Current performers, such as the Individual Plaintiffs, must apply for their Work Identification Card within ninety (90) days of the enactment of the Ordinance:

> All current performers shall obtain complete and submit an application for a Work Identification Card within ninety 90) days from the effective date of this section (the "Grace Period")

§§150.224(c) and 151.214(c).

B.      Upon application, the performers are given a receipt or they may use a copy of their check as something like a temporary license or permit. *See*, §§150.224(c), (e) and 151.214(c), (e).

C.      The Sheriff is allowed up to 14 days to make his decision on the application. *See*, §§150.224(f) and 151.214(f).

D.      If the Sheriff denies the application, the performer must cease dancing immediately as she cannot thereafter obtained a Work Identification Card.

E.      While the Ordinance allows for a performer to appeal the decision denying her application, the temporary license / receipt is *not* valid during the pendency of the appeal. Instead, the Ordinance specifically states that no "provisional Work Identification Cards" can be issued during the appeal:

> (h)      Appeal.  In the event that an applicant for a Work Identification Card is denied, said applicant may request emergency injunctive relief from the Circuit Court of the Fourth Judicial Circuit of the State of Florida. Due to the overriding public interest in not having persons under the age of twenty-one or with criminal convictions identified in paragraph (l) perform in adult entertainment establishments, no provisional Work Identification Cards shall be issued by the Sheriff.

§§150.224(h) and 151.214(h).

F.      The Ordinance allows a non-judicial officer – the Sheriff – to change the *status quo* and prevent speech during the period of time between the denial of an application and the decision by a judge.

54.      The appellate remedy provided by §§150.224(h) and 151.214(h) is more restrictive than those afforded by Florida law and is not constitutionally adequate. Plaintiffs allege the following particulars:

A.      The City has no authority to limit the form of judicial review or to dictate the standard of review to be applied by the judicial branch. The attempt to do so in this instance violates the Separation of Powers and is an *ultra vires* act.

B.      Review based on the standard for emergency injunctions is not appropriate for challenging a prior restraint on speech. Injunctive relief requires an extraordinary showing, a demonstration that the public interest will not be harmed, and a bond requirement.

C.      Florida law would typically allow for the review of a licensing denial through a variety of legal vehicles including a petition for certiorari, an action for declaratory judgment and extraordinary writs (in particular, mandamus and prohibition). Those forms of review – particularly certiorari – provide for broader review than the action for emergency injunctive relief provided by the Ordinance. The narrowing of remedies violates both the First Amendment and Due Process.

55.     The Ordinance allows the Sheriff to deny a license if the applicant has been convicted of a "human trafficking-related" crime. *See*, §§150.224(c) and 151.214(c). There is no statute in Florida pertaining to "human trafficking-related" crimes, that term is not defined in the Jacksonville Code and that term of art lacks any commonly understood meaning. In addition, there are no guidelines for determining whether criminal charges in other states are equivalent to a "human trafficking-related" charge in Florida. Sections 150.224(c) and 151.214(c) of the Ordinance are unconstitutional because they are vague and allow the Sheriff unfettered authority in making permitting decisions. *See*, <u>Fly Fish, Inc. v. City of Cocoa Beach</u>, 337 F.3d 1301, 1312–13 (11th Cir. 2003).

56.     The Ordinance takes a curious and uncertain approach to the regulation of performers under the age of twenty-one. The Ordinance appears to repeal the ban against issuing licenses to performers under the age of twenty-one, but also states that it is the City's intent to reinstate the ban at some unspecified time in the future. Plaintiffs allege the following particulars:

A.     Section 2 of the Ordinance addresses amendments to Chapter 150 of the Jacksonville Code. Among those revisions are significant changes to §150.224(c) which lists qualifications and requirements for issuance of a "Work Identification Card". Those revisions include the elimination of the original prohibition against

issuing Cards to persons under the age of twenty-one. The elimination of that ban is apparent from the fact that the original text is shown as deleted in the Ordinance:

```
15  valid or the City is otherwise not legally prevented from imposing
16  this restriction.  and proof that applicant is at least twenty-one
17  (21) years of age. Work Identification Cards shall not be issued to
18  any person under the age of twenty-one.  Additionally, nNo Work
```

B.     A companion deletion occurs in §150.224(h) which previously stated that an applicant under the age of twenty-one could not obtain a provisional Work Identification Card. The reference to age has been deleted by Section 2 of the Ordinance:

```
9   injunctive relief from the Circuit Court of the Fourth Judicial
0   Circuit of the State of Florida. Due to the overriding public interest
1   in not having persons under the age of twenty-one or with criminal
2   convictions  identified  in  paragraph  (1)  perform  in  adult
3   entertainment establishments, no provisional Work Identification
4   Cards shall be issued by the Sheriff.
```

C.     Exactly the same deletions are reflected in Section 3 of the Ordinance, which revises §§151.214(c) and 151.214(h) of the Code.

D.     While it appears likely that there is no current ban on the issuance of Work Identification Cards to performers under the age of twenty-one, the Ordinance suggests that the age restriction will be triggered or spring into effect at some later date. The relevant portion of the Ordinance reads as follows:

> It is the Council's intent that no Work Identification Card shall be
> issued to any applicant who is under the age of twenty-one (21) years
> of age; however, this requirement shall not become effective unless and
> until the legality of this age restriction is determined to be valid or the
> City is otherwise not legally prevented from imposing this restriction.

*See*, ORD. Sections 2 and 3; §§150.224(c) and 151.214(c).

57.     Exotic dance performers are professional entertainers who typically perform as independent contractors or licensees of an entertainment venue. As independent contractors, performers can, and often do, perform at multiple venues rather that at one club. In addition, it is common for performers to travel to other jurisdictions to perform or to come from other jurisdictions for the purpose of short-term engagements in Jacksonville.

58.     Sections 150.224(c) and 151.214(c) of the Ordinance require performers to list all of the places where they dance and to change that information as they move from club to club:

> (c)     Application for Work Identification Card. …   The application
> shall include: … a list of each adult entertainment establishment where
> the applicant will be performing … . Applicants are required to update
> his or her application with changes to any of the application information
> (except height and weight) within 60 days of the change of such
> information.

59.     The requirement that a performer list each establishment where she may perform is not narrowly tailored and substantially burdens on speech for no reason.

60.     Once a performer receives her Work Identification Card, the City has no legitimate interest in tracking a dancer's performances from day to day and from venue to venue.

61.     There are less restrictive means of regulation which serve the City's interests equally well. The City already has a means of identifying performers in individual clubs as all such entertainment establishments must keep a log of the performers who dance there. *See*, §§150.224(g) and 151.214(g).

62.     Performers who have not yet contracted with any exotic dance club cannot obtain a Work Identification Card because the name of the club must be included in the application; yet clubs are precluded from contracting with new performers who do not yet have a Card.

63.     The Ordinance provisions relative to the ability of a performer under the age of twenty-one to obtain a Work Identification Card and to perform at one of the City's adult dancing or adult entertainment establishments are unconstitutionally vague.

64.     The reference to the City's "intent" and the language stating that the under twenty-one ban "shall not become effective" both suggest that the prohibition is not currently in effect, but will "become effective" at some future time. However, the circumstances and timing of that event are uncertain and ambiguous. Plaintiffs allege the following particulars:

Page 26

A.      The Ordinance is written in the disjunctive so that the under twenty-one ban will apparently be triggered either by a determination that the Ordinance is "valid" *or* a scenario where City is not legally prevented from enforcing the ban. It appears that the ban will go into effect when the first of those events occurs.

B.      The Ordinance states that the ban on performers under the age of twenty-one will go into effect when "the legality of this age restriction is determined to be valid". However, there are no further details as to who makes the decision or how one is to decide that the Ordinance is or is not valid. Plaintiffs note the following:

(1)      The Ordinance is presumably "valid" right now as it was enacted by the City Council through the usual procedures and was signed into law by the Mayor.

(2)      The legislation was prepared by the City's General Counsel [Ordinance at 17 – "Form Approved" statement] who would not have submitted a law he believed was invalid.

(3)      The City may have intended to have the Ordinance go into effect when it was "determined to be valid [by a judge]" since the constitutionality of the under twenty-one law is still being litigated in Wacko's Too. However, the Ordinance does not specify whether the determination as to validity is to be made by a judge – or by any other person.

(4)     The Ordinance does not specify what happens if a judge never determines whether the under twenty-one ban is lawful – as might happen if the current Wacko's Too litigation is dismissed prior to adjudication of this issue.

C.     The Ordinance states that the ban on performers under the age of twenty-one shall not be effective if "the City is otherwise not legally prevented from imposing this restriction." At the time this Complaint is filed, there is no injunction or other order in place which directly prevents the City from enforcing the under twenty-one ban. This is a complicated circumstance which requires some explication:

(1)     The City represented in writing that it would not enforce §§150.224(a), (b) and (g) or  §§151.214(a), (b) and (g) "until such time as the Court rules and enters an order on Plaintiffs' claims directed to those provisions." (Doc. 21 at 3 "City's Forbearance Agreement"). The Forbearance Agreement did *not* include a promise to refrain from enforcing the under twenty-one ban which appears in  §§150.224(c) and (h) of the Code. In addition, the Court *has* ruled on the constitutionality of §§150.224(a) and §§151.214(a). (Doc. 39 at 5-457). Thus, the Forbearance Agreement does not appear to be a legal bar to the enforcement of §§150.224(c) and §§151.214(c) banning performers under the age of twenty-one.

(2)     The Court's Trial Order enjoining the enforcement of the original licensing provisions as an unconstitutional prior restraint did not enjoin the ban on

performers under the age of twenty-one. Rather, the Court reserved judgment on those claims and they remain undecided. (Doc. 39 at 27-29 [Wacko's Too]). Accordingly, the Court has never directly enjoined the enforcement of the under twenty-one law.

(3)   The City has substantially amended §§150.224 and 151.214 in an effort to correct the substantive and procedural defects which doomed their predecessors. No Court has enjoined Ordinance 2022-172-E at this time.

(4)   Accordingly, it appears that there is no legal barrier to the immediate enforcement of the under twenty-one ban and significant doubt exists whether the City bans or does not ban performers under the age of twenty-one.

65.   The vagueness of the Ordinance has a substantial chilling effect on ALLEN and other current performers who are under the age of twenty-one as they cannot determine whether they can perform lawfully at the present time and cannot tell at what point in the future their constitutional right to perform ("speak") will be denied.

66.   The vagueness of the Ordinance has a substantial chilling effect on potential exotic dancer performers under the age of twenty-one who cannot determine whether they are automatically barred from performing or whether they are eligible to apply for a Work Identification Card.  Potential performers cannot tell

whether it is "worth it" to invest their energies (and their $100 license fee) in a career which might disappear tomorrow.

67.     The vagueness of the Ordinance has a substantial chilling effect on the Club Plaintiffs' ability to attract and retain performers who are under the age of twenty-one.

68.     The provisions in §§150.224(c) and 151.214(c) relative to performers under the age of twenty-one impose an unconstitutional prior restraint on Plaintiff ALLEN and other performers and potential performers who are 18, 19 or 20 years of age.

69.     The vagueness and uncertainty of the "trigger provision" in Sections 2 and 3 allow permitting officials at the City unfettered discretion to determine whether the under twenty-one law is "valid" or is under some form of legal disability.

70.     ALLEN, and all other similarly situated performers, have a protectible liberty interest in pursuing an occupation of their choice. *See*, Muratti-Stuart v. Dep't of Bus. & Pro. Regul., 174 So. 3d 538, 540 (Fla. 4th DCA 2015), *quoting* Patel v. Texas Dep't of Licensing & Regulation, 469 S.W.3d 69, 2015 WL 3982687, 58 Tex. Sup. Ct. J. 1298 (Tex. June 26, 2015) (Willett, J., concurring) ("Occupational freedom, the right to earn a living as one chooses, is a nontrivial constitutional right entitled to nontrivial judicial protection.").

71.     The subject Ordinance violates performers' right of occupational liberty and is irrational in the following respects:

A.      The Ordinance is not a mere licensing ordinance with respect to performers under the age of twenty-one, including ALLEN. Those performer are or will be barred entirely from engaging in their chosen, lawful occupation. That flat ban is particularly irrational when one considers that the Ordinance allows other persons under the age twenty-one to work in an exotic dance club (including waitresses, barbacks, deejays and security); other persons under the age of twenty-one can own and operate an exotic dance club; and persons under the age of twenty-one can patronize an exotic dance club.

B.      As noted above, a first-time performer without a contract to perform at a particular venue is precluded from obtaining a Work Identification Card because she is unable to disclose the names of the clubs where she will be performing. A performer cannot contract with an exotic dance club unless she has a Work Identification Card.

72.     The violation of occupational liberty is especially acute in factual circumstances such as ALLEN's, where she qualified under the City's Codes as a performer and has engaged in her chosen professional for a period of time; the Ordinance deprives her of her livelihood.

73.     The violation of occupational liberty is especially irrational in factual circumstances such as ALLEN's, where she has performed without being exposed to human trafficking at any time in an industry which has never experienced a human trafficking arrest.

74.     The Ordinance is not a law of general application, but is a content-based ban targeting those businesses and individuals providing exotic dancer performances.     Dancing     Entertainment     Establishments,     Adult     Dancing Establishments and their respective performers are singled out for a licensing requirement not applicable to any other kind of business.

75.     The numerous constitutional defects in these various provisions, and the interrelated nature of these provisions, precludes severance of the unconstitutional provisions.

## **ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF**

76.     All of the Plaintiffs' speech rights have been chilled now, and in the future, as they risk fines and the loss of their livelihoods, if they continue to engage in the kind of speech to which the Defendant objects; to-wit: exotic dance performances.

77.     The Individual Plaintiffs reasonably fear that they cannot obtain a Work Identification Card or cannot obtain one in a timely fashion; the Individual Plaintiffs cannot perform without a Work Identification Card.

78.     Unless the actions, policies and practices of Defendant are enjoined by this Court, all of the Plaintiffs will suffer the continuing loss of their constitutional rights.

79.     All of the Plaintiffs have suffered irreparable injury and continue to suffer irreparable injury as a result of the subject Ordinance and the City's efforts to enforce it.

80.     None of the Plaintiffs has a plain, adequate or complete remedy to protect their constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

81.     None of the Plaintiffs has an adequate remedy at law. Deprivation of rights guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief. In cases involving the loss of First Amendment rights, such as in this case, damages are both inadequate and unascertainable.

82.     The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by laws, such as the challenged Ordinance, which interfere with the public's rights guaranteed under the First and Fourteenth Amendments.

83.     A permanent injunction will preserve Plaintiffs' civil rights and will minimize the need to award extensive compensatory damages.

## DAMAGES AND ATTORNEY'S FEES

84.    Because of the Defendant's actions, Plaintiffs' First and Fourteenth Amendment rights have been violated and Plaintiffs are faced with similar and repeated violations of their rights in the future if they do not abandon their speech activities.

85.    Plaintiffs do not assert a claim for money damages in this Complaint because this is a pre-enforcement challenge and none of the Plaintiffs has been required to pay the license fee or has lost dance opportunities or performers, as the case may be. Plaintiffs reserve the right to amend this Complaint to include a damages claim in the event that they suffer economic losses in the future.

86.    Plaintiffs have retained Benjamin, Aaronson, Edinger & Patanzo, P.A. as their attorneys to represent them in this action and have agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

## COUNT I
## THE LICENSING PROVISIONS OF ORDINANCE 2022-172-E IMPOSE AN UNCONSTITUTIONAL PRIOR RESTRAINT

87.    Plaintiffs reallege the facts set forth in Paragraphs 1-54, and 74-83, and incorporate those facts into this Count by reference.

88.     This is an action for declaratory relief and injunctive relief brought by each of the Plaintiffs against Defendant CITY OF JACKSONVILLE under this Court's general jurisdiction and pursuant to 28 U.S.C. §2201 and 42 U.S.C. §1983.

89.     Plaintiffs are uncertain as to their rights and remedies under the Jacksonville Code of Ordinances, as it has been applied to Plaintiffs in violation of the First Amendment to the United States Constitution.

90.     Ordinance 2022-172-E imposes a prior restraint for the reasons specified in this Complaint. In summary, the licensing provisions suffer from the following defects:

A.      The Sheriff is afforded total unfettered discretion in determining whether the information provided in support of an application is "satisfactory".

B.      The time period for issuing Work Identification Cards (14 days) is unreasonably long.

C.      Performers are not guaranteed the right to engage in First Amendment speech (i.e. dance) while their application is being reviewed or in the event that the Sheriff fails to make a licensing decision; while the performer is allowed to use her check as a temporary license, the Club Plaintiffs are prohibited from allowing her to dance without an actual Work Identification Card.

D.      The Ordinance does not preserve the *status quo* pending judicial review.

E.      The trigger language for reauthorizing the ban against performers under the age of twenty-one affords undue discretion to the permitting officials.

F.      Disqualification based on "human trafficking-related" charges affords the decision maker too much discretion because there is no such crime under Florida law (or the laws of other states) and the term is otherwise vague and undefined.

91.     The restraint imposed by Ordinance 2022-172-E is unconstitutional on its face because the Ordinance fails to include all of the substantive and procedural safeguards required by FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596 (1990).

92.     The Individual Plaintiffs have performed at their respective clubs for a period of months to years. However, following the expiration of the ninety (90) day grace period provided by the Ordinance, those Plaintiffs will be unable to perform unless the Sheriff has issued them a Work Identification Card.

93.     Because the Sheriff can withhold that Card indefinitely, the Ordinance impermissibly allows the Sheriff to alter the *status quo* and imposes a prior restraint without a decree from a judicial officer.

94.     The Ordinance provides no appellate remedy at all if the Sheriff fails to act on a license application. Sections 150.224(h) and 151.214(h) provide for an appeal in the event that an application is denied, but provide no administrative or judicial remedy if the Sheriff simply fails to make a decision on the application.

95.     Sections 150.224(h) and 151.214(h) purportedly provide an appellate remedy in the event that a Work Identification Card is denied:

(h)     *Appeal*.   In the event that an applicant for a Work Identification Card is denied, said applicant may request emergency injunctive relief from the Circuit Court of the Fourth Judicial Circuit of the State of Florida.

96.     The remedy provided by the Ordinance is more restrictive than those afforded by Florida law and is not constitutionally adequate. Plaintiffs allege the following particulars:

A.      The City has no authority to limit the form of judicial review or to dictate the standard of review to be applied by the judicial branch. The attempt to do so in this instance violates the Separation of Powers and is an *ultra vires* act.

B.      Review based on the standard for emergency injunctions is not appropriate for challenging a prior restraint on speech. Injunctive relief requires an extraordinary showing, a demonstration that the public interest will not be harmed, and a bond requirement.

C.      Florida law would typically allow for the review of a licensing denial through a variety of legal vehicles including a petition for certiorari, an action for declaratory judgment and extraordinary writs (in particular, mandamus and prohibition). Those forms of review – particularly certiorari – provide for broader

review than the action for emergency injunctive relief provided by the Ordinance. The narrowing of remedies violates both the First Amendment and Due Process.

WHEREFORE, Plaintiffs pray for the following relief:

A.      That this Court take jurisdiction over the parties and this cause.

B.      That this Court enter a judgment declaring that Ordinance 2022-172-E is unconstitutional on its face and as applied to the Plaintiffs because it imposes a prior restraint without the procedural and substantive protections required by the First Amendment.

C.      That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing Ordinance 2022-172-E against Plaintiffs and all other similarly situated persons; from requiring performers to obtain a Work Identification Card; and from penalizing any Club or performer for failure to obtain a Work Identification Card.

D.      That this Court award Plaintiffs their recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

E.      That this Court award Plaintiffs all other relief in law and in equity to which they may be entitled.

## COUNT II

## THE PROHIBITION AGAINST PERFORMERS UNDER THE AGE OF TWENTY-ONE IS UNCONSTITUTIONAL

97.    Plaintiffs reallege the facts set forth in Paragraphs 1-3, 5-48, 56, 68 and 74-83,  and incorporate those facts into this Count by reference.

98.    This is an action for declaratory relief and injunctive relief brought by ALLEN and the Club Plaintiffs against Defendant CITY OF JACKSONVILLE under this Court's general jurisdiction and pursuant to 28 U.S.C. §2201 and 42 U.S.C. §1983.

99.    Plaintiffs are uncertain as to their rights and remedies under the Jacksonville Code of Ordinances, as it has been applied to Plaintiffs in violation of the First Amendment to the United States Constitution.

100.   On its face, Ordinance 2022-172-E appears to prohibit performers under the age of twenty-one from engaging in speech in the form of dance at the Club Plaintiffs. That prohibition appears to be in immediate effect as the Ordinance has not been enjoined, there are no present legal constraints on its enforcement and the City Council and its attorney presumably believe it is valid – or they would not have enacted it.

101.   ALLEN is under the age of twenty-one and will be banned from performing at Emperor's or any of the other Club Plaintiffs.

102.   The subject Ordinance prohibits any of the Club Plaintiffs from producing shows featuring performers under the age of twenty-one. Each of the Club Plaintiffs is affected by that ban, which affects as many as one hundred of their current performers.

103.   Sections 150.224(c) and 151.214(c) of the Ordinance violate the First Amendment rights of citizens over the age of eighteen, but younger than twenty-one. *Compare*, Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272 (10th Cir. 2002); State v. Cafe Erotica, Inc., 500 S.E.2d 574 (Ga. 1998); T. Weston, Inc. v. Mineral Cty., W.Va., 2008 WL 3474146 (N.D. W. Va. 2008). Plaintiffs allege the following particulars:

A.   The Constitution does not permit the deprivation of First Amendment rights based on the age of *sui juris* citizens who have attained the age of eighteen.

B.   The ban against performances by persons under the age of twenty-one is content-based in that it only applies to Adult Entertainment Establishments and Dancing Entertainment Establishments, all of which provide exotic dance performances as entertainment. No other business or industry faces such an age-based ban in Jacksonville.

C.   Jacksonville lacks a compelling governing interest in support of its age ban and the regulation chosen to address the government interest does not employ the least restrictive means.

D.    The City's interest in deterring human trafficking - whether compelling or merely substantial – is not sufficiently advanced by the complete ban on performances by persons under the age of twenty-one. That is particularly true as it has been established that the City has never made a human trafficking arrest at any facility governed by Chapters 150 or 151 of the Jacksonville Code, including the businesses owned by the Club Plaintiffs.

E.    The City considered no evidence or studies supporting the notion that human trafficking is associated with adult dance establishments or that trafficking is more common in such establishments; or, to the extent that such information was considered, it consisted of shoddy data which is insufficient to support the asserted government interest.

104.    The ban on performers under the age of twenty-one is not narrowly tailored and does not advance the asserted government interest commensurate with the burden on free speech. Plaintiffs allege the following particulars:

A.    There is no evidence-based reason to assume that all persons under the age of twenty-one are susceptible to human trafficking, yet the Ordinance prohibits the exercise of First Amendment rights based on an unproven assumption.

B.    There are reasonable alternatives to a flat ban on performers under the age of twenty-one, including individualized education, public service announcements, additional internal security and monitoring requirements by dance

clubs, limiting performances to daytime hours, enhanced criminal penalties for those actually engaged in human trafficking, and better training of police officers.

C.      The age-based ban makes no attempt to distinguish between performers in establishments providing alcoholic beverages and those who perform in "juice bars". To the extent that the Ordinance is justified on the basis of the Twenty-First Amendment, that justification does not apply to Sinsations or to performers who dance at Sinsations.

D.      To the extent that the age-based ban is based on the sale of alcoholic beverages, case law has only upheld such restrictions when applied to *nude* bars; the attempt to regulate dance performances by adults in Dancing Entertainment Establishments (i.e. "bikini bars") is overly broad, not narrowly tailored, does not further a substantial governmental interest and is unsupported by the case law.

E.      The City's interest in deterring human trafficking is not sufficiently advanced by the complete ban on performances by persons under the age of twenty-one; the regulation fails the "reasonable fit" test.

F.      The City's interest in limiting persons under the age of twenty-one from participating in the operation of Adult Entertainment Establishments or Dancing Entertainment Establishments – whether on the grounds of deterring human trafficking or otherwise - is either attenuated or non-existent as evidenced by the fact

that the City does not prohibit persons under the age of twenty-one from any of the following:

(1)   Owning an Adult Entertainment Establishment or Dancing Entertainment Establishment;

(2)   Working at an Adult Entertainment Establishment or Dancing Entertainment Establishment in any capacity other than as a performer;

(3)   Patronizing Adult Entertainment Establishment or Dancing Entertainment Establishment as a customer.

G.   The Ordinance is constitutionally underinclusive for much the same reason that it fails narrow tailoring under paragraph F. If the City actually intended to target human trafficking rather than exotic dancers, it would also have prohibited persons under the age of twenty-one from being employed by or entering an Adult Entertainment Establishment or Dancing Entertainment Establishment. *See, generally*, City of Ladue v. Gilleo, 512 U.S. 43, 51, 114 S.Ct. 2038 (1994).

H.   The Ordinance improperly restrains the speech rights of current performers such as ALLEN who are under the age of twenty-one. The Ordinance does not "grandfather" existing performers and makes no effort to preserve their constitutional rights.

105.   In addition to the infringement of Plaintiffs' First Amendment speech interests, the ban on performers under the age of twenty-one infringes on the Club

Plaintiffs' First Amendment right of association with ALLEN and other adult performers subject to the ban. ALLEN's First Amendment right of association is likewise infringed by the age-based ban.

106.   The ban on performers under the age of twenty-one violates Plaintiffs' right of Equal Protection as guaranteed by the Fourteenth Amendment. Plaintiffs allege the following particulars:

A.    The ban directly affects the fundamental (First Amendment) rights of adults under the age of twenty-one but over the age of eighteen. Accordingly, heightened scrutiny is employed when weighing the asserted government interest.

B.    The age-based ban on performers under the age of twenty-one is not supported by a compelling government interest and does not adopt the least restrictive means of regulation.

C.    The distinction made between adults over the age of twenty-one and those under twenty-one is discriminatory and does not advance a sufficient government interest; rather, it is irrational, arbitrary and invidious. Furthermore, the age-based distinction is directly linked to the content of the speech of the disadvantaged speaker.

D.    The City irrationally allows Adult Entertainment Establishments and Dancing Entertainment Establishments to employ all manner of workers (including such positions as security personnel, bar backs, waitresses and cooks) who are under

the age of twenty-one with the sole exception of "performers" who cannot work at those establishments.

E.      The City irrationally allows customers under the age of twenty-one to enter the premises as patrons while excluding performers of comparable age.

F.      The City irrationally allows persons under the age of twenty-one to own Adult Entertainment Establishments and Dancing Entertainment Establishments and to employ other persons in those establishments who are under the age of twenty-one while excluding performers of comparable age from the premises altogether.

WHEREFORE, Plaintiffs pray for the following relief:

A.      That this Court take jurisdiction over the parties and this cause.

B.      That this Court enter a judgment declaring that §§150.224(c) and 151.214(c), as amended by Ordinance 2022-172-E, are unconstitutional on their face and as applied to the Plaintiffs because the ban on adult performers under the age of twenty-one violates Plaintiffs' First Amendment rights.

C.      That this Court enter a judgment declaring that the provisions of §§150.224(c) and 151.214(c), as amended by Ordinance 2022-172-E, are unconstitutional on their face and as applied to the Plaintiffs because the ban on adult performers under the age of twenty-one violates Plaintiffs' right of Equal Protection guaranteed by the Fourteenth Amendment.

D.     That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing the Ordinance's ban on adult performers under the age of twenty-one against the Plaintiffs, and all other similarly situated individuals.

E.     That this court award Plaintiffs their recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.     That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

<u>**COUNT III**</u>

**THE REQUIREMENT THAT PERFORMERS DISCLOSE THE NAMES OF ALL VENUES WHERE THEY WILL PERFORM IS BURDENSOME AND NOT NARROWLY TAILORED**

107.   Plaintiffs reallege the facts set forth in Paragraphs 1-3, 5-48, 58-62, and 74-83, and incorporate those facts into this Count by reference.

108.   This is an action for declaratory relief and injunctive relief brought by each of the Plaintiffs against Defendant CITY OF JACKSONVILLE under this Court's general jurisdiction and pursuant to 28 U.S.C. §2201 and 42 U.S.C. §1983.

109.   Plaintiffs are uncertain as to their rights and remedies under the Jacksonville Code of Ordinances, as it has been applied to Plaintiffs in violation of the First Amendment to the United States Constitution.

110.   Sections 150.224(c) and 151.214(c) of the Ordinance require performers to list all of the places where they dance and to change that information as they move from club to club. Those sections are not narrowly tailored and do not advance any substantial governmental interest commensurate with the burden on free speech.

111.   Performers, including the Individual Plaintiffs, have a First Amendment right to perform for who they want, where they want, when they want subject only to reasonable time, place and manner restrictions.

112.   The City has no legitimate interest in knowing where performers are dancing on a day to day basis so long as the performer is licensed and the venue is licensed. America is not yet the land of Big Brother.

113.   The Work Identification Card is personal to the performer rather than to the venue; entertainment establishments are licensed under other provisions of the Code. Presumably a performer can dance at any license club in Jacksonville provided only that she has first obtained a Work Identification Card for herself. Accordingly, no government interest is served by requiring disclosure of useless information and requiring a performer to frequently update that useless information.

114.   Entertainment establishments have a separate obligation to keep track of the performers dancing in their clubs. *See*, §§150.224(g) and 151.214(g) ("The adult entertainment establishment shall compile and retain a complete performer

roster that includes all performers performing at the establishment for a period of thirty (30) days from each performer's most recent performance date. The performer roster shall be organized by date and performer, including the performer's first and last name and stage name."); *See, also*, §§150.224(a) and 151.214(a) (Requiring establishment managers to verify that a performer has a Work Identification Card). To the extent that the government has any legitimate interest in knowing which performers are dancing in which clubs on which days, that interest is already met by §§150.224(g) and 151.214(g).

115.   The Ordinance does not account for performers who have not yet contracted to perform at any specific venue. In this context, the Code creates both an impossible Catch-22 scenario and a prior restraint. The application requires a new performer to provide information which does not exist and there is no option to select "undecided" or "not yet determined". Failure to provide the club information will result in denial of the application. *See*, §§150.224(f) and 151.214(f) (Sheriff directed to deny an application if the proofs submitted are not "satisfactory"). Thus, a first-time performer or a performer new to the area cannot obtain a license without first contracting with an entertainment venue, but the venue cannot contract with her unless she has a Work Identification Card.

116.   For performers who change their clubs frequently, the requirement that they repeatedly disclose this information represents a significant burden as each such change requires an in-person trip to the Sheriff's Office.[4]

117.   There are less restrictive means of regulation which serve the City's interests equally well. In particular, a Work Identification Card should authorize a performer to dance at any licensed facility in the City. Because the venue must maintain a record of the dancer's performance, including her Work Identification Card, the City's interest in tracking individual performers has already been met.

118.   The ready availability of alternate regulations which serve the government interest equally well demonstrate the fact that the City has made no effort to adopt a narrowly tailored definition.

WHEREFORE Plaintiffs pray for the following relief:

A.     That this Court takes jurisdiction over the parties in this cause;

B.     That this Court determine and declare that the requirement under §§150.224(c) and 151.214(c) that performers report all of the places where they will be dancing is not narrowly tailored and does not advance a substantial government interest as required under intermediate scrutiny.

---

[4] On information and belief, the Sheriff requires a personal appearance for every aspect of the licensing process, including renewals, replacements and changes in information; no part of this process can be conducted by mail or on-line.

C.     That this Court determine and declare that the requirement under §§150.224(c) and 151.214(c) that performers report all of the places where they will be dancing imposes a substantial burden on speech without advancing any legitimate or substantial government interest, or the burden is not proportional to the government interest.

D.     That this Court enter an Order permanently enjoining the CITY OF JACKSONVILLE from enforcing the venue disclosure provisions of §§150.224(c) and 151.214(c).

E.     That this Court award Plaintiffs their recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.     That this Court award Plaintiffs all other relief in law and in equity to which they may be entitled.

## COUNT IV

## PORTIONS OF ORDINANCE 2022-172-E
## ARE UNCONSTITUTIONALLY VAGUE

119.   Plaintiffs reallege the facts set forth in Paragraphs 1-3, 5-48, 63-69 and 74-83 and incorporate those facts into this Count by reference.

120.   This is an action for declaratory relief and injunctive relief brought by each of the Plaintiffs under this Court's general jurisdiction and pursuant to 28 U.S.C. §2201 and 42 U.S.C. §1983.

121.   Plaintiffs are uncertain as to their rights and remedies under the Jacksonville Code of Ordinances, as it has been applied to Plaintiffs in violation of the First and Fourteenth Amendments to the United States Constitution.

122.   Sections 150.224(c) and 151.214(c) of the subject Ordinance are unconstitutionally vague because the term "human traffic-related" offense does not refer to any crime recognized by Florida law, the term is undefined and lacks any commonly understood meaning.

123.   The "trigger provision" found in sections 150.224(c) and 151.214(c) of the subject Ordinance are unconstitutionally vague because it is not possible to determine the circumstances under which the ban against performers under the age of twenty-one will go into effect; that decision is left to the total unbridled discretion of law enforcement officers.

WHEREFORE Plaintiffs pray for the following relief:

A.     That this Court takes jurisdiction over the parties in this cause.

B.     That this Court determine and declare that the inclusion of the term "human trafficking-related" and the trigger provisions for reinstatement of the ban against performers under the age of twenty-one render §§150.224(c) and 151.214(c) of the subject Ordinance unconstitutionally vague.

C.     That this Court enter an Order permanently enjoining the CITY OF JACKSONVILLE, and its agents and employees, from enforcing §§150.224(c) and 151.214(c) of the Jacksonville Code against Plaintiffs or any other similarly situated persons.

D.     That this Court award Plaintiffs their recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

E.     That this Court award Plaintiffs all other relief in law and in equity to which they may be entitled.

## COUNT V

### ORDINANCE 2022-172-E
### VIOLATES PLAINTIFFS RIGHT OF OCCUPATIONAL LIBERTY

124.   Plaintiffs reallege the facts set forth in Paragraphs 1-3, 5-48 and 71-83, and incorporate those facts into this Count by reference.

125.   This is an action for declaratory relief and injunctive relief brought by each of the Plaintiffs under this Court's general jurisdiction and pursuant to 28 U.S.C. §2201 and 42 U.S.C. §1983.

126.   Plaintiffs are uncertain as to their rights and remedies under the Jacksonville Code of Ordinances, as it has been applied to Plaintiffs in violation of the First and Fourteenth Amendments to the United States Constitution.

127.   The subject Ordinance unconstitutionally infringes upon Plaintiff's right of occupational liberty in two respects:

A.    It prohibits performers under the age of twenty-one from pursuing a lawful profession while allowing all other persons under twenty-one to be employed by, own and patronize exactly the same businesses. That distinction is irrational.

B.    The requirement in §§150.224(c) and 151.214(c) that performers disclose the names of all venues where they intend to dance and to immediately update that information is duplicative, irrational and, for new performers, effectively bars them from the profession under the Catch-22 scenario described above.

WHEREFORE Plaintiffs pray for the following relief:

A.    That this Court takes jurisdiction over the parties in this cause.

B.    That this Court enter a judgment declaring that §§150.224(c) and 151.214(c), as amended by Ordinance 2022-172-E are unconstitutional on their face and as applied to the Plaintiffs because the ban on adult performers under the age of twenty-one violates Plaintiffs' Fourteenth Amendment right of occupational liberty.

C.    That this Court determine and declare that the requirement under §§150.224(c) and 151.214(c) that performers report all of the places where they will be dancing violates Plaintiffs' Fourteenth Amendment right of occupational liberty.

D.     That this Court enter an Order permanently enjoining the CITY OF JACKSONVILLE from enforcing the provisions of §§150.224(c) and 151.214(c).

E.     That this Court award Plaintiffs their recoverable costs recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.     That this Court award Plaintiffs all other relief in law and in equity to which they may be entitled.


                                        BENJAMIN, AARONSON, EDINGER &
                                        PATANZO, P.A.


                                          /s/  Gary S. Edinger
DANIEL R. AARONSON, Esquire        GARY S. EDINGER, Esquire
Florida Bar No.: 314579            Florida Bar No. 0606812
JAMES S. BENJAMIN, Esquire         305 N.E. 1st Street
Florida Bar No.: 293245            Gainesville, Florida 32601
1700 East Las Olas Blvd., Suite 202   (352) 338-4440  (Fax) (352) 337-0696
Ft. Lauderdale, Florida 33301      GSEdinger12@gmail.com
(954) 779-1700 (Fax) (954) 779-1771
sexlaw@bellsouth.net
danaaron@bellsouth.net


                    *Attorneys for Plaintiffs*


                            Page 54