UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE CITY DISTRICT

|  |  |
|---|---|
| **WACKO'S TOO, INC.**, a Florida, corporation doing business as "Wacko's", et al,<br><br>Plaintiffs,<br><br>vs.<br><br>**CITY OF JACKSONVILLE**, a Florida municipal corporation,<br><br>Defendant. | CASE NO.: 3:22-cv-798-TJC-MCR |

# PLAINTIFFS' REPLY BRIEF ON THE MERITS

COME NOW the Plaintiffs, pursuant to the Court's August 8, 2022 Order (Doc. 19), and file their Reply Brief on the merits, and say:

The core issues in this case were already decided in Wacko's I. *See*, (Doc. 39; Wacko's Too, Inc. v. City of Jacksonville, 522 F.Supp. 3d 1132 (M.D. Fla. 2021)). Indeed some of the very language declared unconstitutional in Wacko's I is again at issue in this case. The City's response to Plaintiffs' prior restraint claim is twofold: (1) the law is not a prior restraint because it was enacted to combat human trafficking and was not motivated by censorship; and (2) the admitted flaws in the

ordinance are technical and should be ignored by the Court.[1] The City's few case citations in support of this laughably weak rejoinder come from outside this Circuit and are primarily District Court decisions. (Doc. 24 at 4-6). Most tellingly, the City never discusses the fact that Wacko's I already determined that the same permitting scheme was an unconstitutional prior restraint under the controlling authorities of FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596 (1990) and Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999).[2]

The City argues that it has the authority to enact a licensing law to combat human trafficking. (Doc. 24 at 3-5). That is a non-issue as Plaintiffs have never

---

[1] Prior restraint analysis is separate and apart from the intermediate scrutiny which examines such issues as narrow tailoring and adverse secondary effects:

> The "intermediate scrutiny" analysis applicable to content-neutral restrictions on speech is distinct from the prior restraint analysis... The latter is concerned with the risks of censorship and delay when the enjoyment of protected expression is contingent upon obtaining permission from government officials; the former is concerned with the ends government can pursue, the means with which it can pursue those ends, and the relationship between them.

Chesapeake B & M, Inc. v. Harford Cnty., Md., 58 F.3d 1005, 1013 (4th Cir. 1995). In contrast to time, place and manner restrictions, prior restraints are presumed to be unconstitutional. *See*, Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S. Ct. 631, 639 (1963).

[2] The decision in Wacko's I was a final adjudication after a bench trial. However, a final judgment has not yet been entered in that case. Accordingly, neither res judicata nor issue preclusion apply. *See*, Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171 (2008). Nonetheless as one Florida jurist put it, "even if neither *res judicata* nor collateral estoppel applied, after reviewing the pleadings, I *again* would enter the exact same summary judgment…" In re Via Airlines, Inc., No. 6:19-BK-06589-KSJ, 2021 WL 4129671 at *5 (Bankr. M.D. Fla. Sept. 10, 2021) (emphasis original).

claimed that the City lacks the authority to regulate in this area or that licensing schemes are per se unlawful. However, any licensing program must conform to constitutional standards and Jacksonville's does not.

The City complains that Plaintiffs' analysis of the multiple flaws in its code is "hyper-technical". (Doc. 24 at 7). Of course it's a technical review; that's exactly what prior restraint analysis requires. When the Eleventh Circuit says that "any amount of discretion beyond the merely ministerial is suspect" and that "[s]tandards must be *precise and objective*" it is emphasizing just how tough these standards are. Lady J. Lingerie, 176 F.3d at 1362 (emphasis original). When the Supreme Court tells us that "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained" the Court means what it says. FW/PBS, 493 U.S. at 228.

This is a technical area of the law. The sad truth is that the City just fails those technical standards.

That is surprising given the detailed roadmap of the Wacko's I decision and the painstaking efforts by Plaintiffs to detail exactly what was wrong with the first licensing scheme. The City nonetheless enacted a new licensing system with the same flaws. Even more surprising, the City cut and pasted language from the first Ordinance which the Plaintiffs had highlighted in their 2020 Complaint and which

this Court specifically found to be unconstitutional in Wacko's I. The problematic language reads as follow:

> … Should the Sheriff determine that the proof submitted with the application for the Work Identification Card as required hereinabove is not satisfactory or full payment of the application fee is not received, the sheriff shall deny issuance of the said Work Identification Card…

§150.224(f), §151.214(f).

> The Court declared that same language to be unconstitutional:
>
> However, the Sheriff may include "whatever information he or she deems relevant" on the application - neither precise nor objective - *and may evaluate the application as satisfactory or unsatisfactory* however he or she chooses to do so. §§ 150.224(c), 151.214(c). "[V]irtually any amount of discretion beyond the merely ministerial is suspect," and the licensing scheme places much more than ministerial discretion in the hands of the Sheriff. Lady J. Lingerie, 176 F.3d at 1362. (emphasis added).

(Doc. 39 at 16).

In truth, it is relatively simple to design a constitutional licensing scheme for exotic dancers. A constitutional law should look something like this:

> ● The licensing ordinance specifically lists the purely objective qualifications and requires that a license issue once the clerk confirms that the criteria have been met. Appropriate criteria for a performer should be confined to a minimum: (1) a complete application; (2) proof of identity through a driver's license or any other government ID; (3) proof that the performer is over the age of 18; (4) no current suspension; and (5) no conviction within 3-5 years for specifically described crimes related to the entertainment industry.

- Upon receipt of the application and payment of the fee, the clerk should issue a temporary license which is valid unless and until the application is denied.

- The licensing decision must be made within a specified brief period of time. For this very limited inquiry, even the most sclerotic bureaucracy ought to be able to manage the task within 3-5 business days.

- The ordinance must guarantee that the performer can continue to perform without a permanent license if the decision is not made within the specified time.

- In the event of a license denial, the City must specify the reason(s) for denial.

- In the event of a license denial, a dancer challenging the decision must be allowed to continue to perform until a judge confirms that there were lawful grounds to deny the application.

Ordinance 2022-172-E does none of these things. The City even fails at the simple task of providing a temporary license. Instead of just issuing a paper which says that the dancer can perform, the Ordinance talks about checks as evidence and the possibility that a receipt could function as a temporary license (if specially requested). On top of that, the informal receipt clearly does not satisfy the independent requirement imposed on clubs that prohibits any performances by dancers who lack a Work Identification Card. *Compare*, §§150.224(a), (g) and 151.214(a), (g) *with* §§150.224(c), (e) and (f) and §§151.214(c), (e) and (f).

The City invites the Court to fix the problem by "constru[ing] the Code provisions consistently to allow dancers to perform during the review period

(which they can), and clubs can allow dancing in the interim, provided Work Identification Cards are on file once approved." (Doc. 24 at 6). However, this Court has no authority to rewrite the plain and unambiguous text of the law. *See*, Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1256 (11th Cir. 2005) ("We 'will not, however, rewrite the clear terms of a statute in order to reject a facial challenge,' and, as a federal court, 'we must be particularly reluctant to rewrite the terms of a state statute.'"); *See, also*, Bischoff v. Fla., 242 F.Supp. 2d 1226, 1241 (M.D. Fla. 2003) ("Federal courts are courts of limited jurisdiction. The courts do not reach out to reform or rewrite state statutes that seem to require some improvement.").[3]

Plaintiffs challenged the length of time which the City specifies for the licensing decision: 14 days. *See*, §§150.224(f) and 151.214(f). The Constitution requires that the decision be made swiftly. *See*, Lady J. Lingerie, 176 F.3d at 1363 ("…Freedman's requirement that the status quo be maintained while public officials are deciding does not eliminate the requirement that the decision itself must be prompt."). Here, an applicant's prior criminal record can be determined

---

[3] The City appears to believe that the 90 day grace period for existing dancers to apply for a Work Authorization Card somehow preserves the status quo. (Doc. 24 at 6-7, referencing §§150.224(c) and 151.214(c)). As the Robot often said on Lost in Space, "It does not compute". Robot (Lost in Space), https://en.wikipedia.org/wiki/Robot_(Lost_in_Space) (Last accessed 11/15/22). The grace period expired months ago and no longer provides any benefit to dancers now, or in the future, when they must renew their Work Cards.

within a matter of minutes; whether or not an application is complete can be determined at a glance. *See*, Doc. 1-2 (Application for Work Identification Card). Even an inept clerk should be able to process a dancer's application within a day.

The City does not offer a defense of its 14 day review period. In fact, the City does not address the issue at all – because it cannot.

Instead, the City spends an inordinate amount of time defending its right to deny a license if the applicant has been convicted of a "human trafficking-related" crime. (Doc. 24 at 16-17). The City views Plaintiffs' challenge to that language as a vagueness issue, a claim which the Plaintiffs have made.[4] However, Plaintiffs primarily analyze that provision as a prior restraint because it affords the Sheriff too much discretion. (Doc. 2 at 4, 13). Had the City defined the crime as "human trafficking", or simply referred to the Florida criminal statute, it would have a constitutional law. However, by adding the "related" modifier, the City obviously intends to include additional crimes as disqualifiers. The problem is that no one knows which crimes. The City's suggestion that dancers can "Google it" (Doc. 24 at 17) does not add any precision to that discretionary term and is hardly a vote of confidence for the law.

The requirement that performers disclose the names of all venues where they

---

[4] Plaintiffs rest on their initial Motion for support of their vagueness claims and do not further address those issues here. Plaintiffs will also rely on their prior briefing with respect to their Occupational Liberty claim.

intend to perform burdens speech, is unworkable in practice,[5] and is not narrowly tailored to advance any legitimate governmental interest. *See*, §§150.224(c) and 151.214(c). The City claims that the disclosure requirement is intended to allow "law enforcement to keep track of performers". (Doc. 24 at 8 n. 4). Any legitimate interest Jacksonville may have is already met by the fact that City maintains records for all licensed performers and every club must document which performers dance at their establishment. The disclosure is paternalistic overkill.

The City's ban on performers under the age of 21 is unconstitutional under the First Amendment and the Equal Protection Clause. *See*, argument in <u>Wacko's I</u>. The problematic nature of that ban has not been improved by the enactment of Ordinance 2022-172-E. The City took an unconstitutional ban on adult dancers, ran it through an indecipherable algorithm (i.e. the new Ordinance), and ended up with a situation where the age restriction is both vacated and in full effect at the same time – an overlapping wave function which would terrorize Schrödinger's cat.

Plaintiffs are of the opinion that their constitutional challenge against the age restriction has not been rendered moot by Ordinance 2022-172-E. The City clearly intends to reenact the ban sometime in the future or, alternatively, it has or will automatically spring back into existence if one of the inscrutable conditions is met.

---

[5] As Plaintiffs explained in their initial brief, a new performer cannot obtain employment without a Card, but is not entitled to a Card unless she discloses an employer. Only the Court is in a position to cut that Gordian knot.

*See*, McGuire v. Marshall, 50 F.4th 986, 999 (11th Cir. 2022) ("The repeal or amendment of a statute or policy generally will moot a challenge *unless there is a 'substantial likelihood' that the challenged statute or policy will be reenacted or reinstated.*" (emphasis added)). The issue remains a live one. The ambiguous and confusing treatment of the under 21 ban lends additional uncertainty to the licensing process. The City never explain how its conditional repeal is supposed to actually work. The chilling effect on potential dancers is obvious.

The parties have briefed the under 21 ban over scores of pages and the City adds almost nothing new to the discussion. The City's citation to Club Madonna Inc. v. City of Miami Beach, 42 F.4th 1231 (11th Cir. 2022) is unavailing. That case recounts a single instance of trafficking eight years ago in a club some 350 miles from any of the Plaintiffs' establishments. The fact that trafficking has occurred on one occasion somewhere else provides scant support for Jacksonville's claim that it can ban 18, 19 and 20-year adults from performing in local clubs.

That said, Club Madonna *is* instructive in several ways. Most important is the fact that the dancer registration system approved in Club Madonna ***permitted*** performers over the age of 18 to dance in Miami Beach; there was ***no ban*** on adult performers under the age of 21. Miami Beach justified its identification requirements as a means of combatting human trafficking (*no*t "human trafficking-related" crimes). It is clear that regulations well short of a ban were up to the task.

In terms of narrow tailoring, Club Madonna shows that Jacksonville ignored readily available alternatives in pursuit of the maximum possible burden on speech. *Compare*, Sable Commc'ns of California, Inc. v. F.C.C., 492 U.S. 115, 119, 109 S. Ct. 2829, 2833 (1989) ("While the government unquestionably has a legitimate interest in, *e.g.,* protecting children from exposure to indecent dial-a-porn messages, §223(b) is not narrowly drawn to achieve any such purpose. Its flat-out ban of indecent speech is contrary to the First Amendment.").

Club Madonna bolsters the only conclusion that can be reasonably drawn from Jacksonville's meager legislative record: young teens are especially vulnerable to trafficking; adults are not.[6] Finally, the City's citation to Club Madonna for the proposition that adult businesses can be closely regulated for purposes of *Fourth* Amendment inspections says nothing about Plaintiffs' *First* Amendment rights. Rather, it only emphasizes the point that inspections and other regulations meant to combat human trafficking are an effective alternative to outright bans on speech.

---

[6] The City claims, without evidence, that a 16 year old performed in a local club. (Doc. 24 at 13 n. 6). That footnote must be disregarded for several reasons. First, arguments contained only in a footnote are deemed waived. *See*, Thompson v. Comm'r of Soc. Sec., 2022 WL 2317462 at *1 (M.D. Fla. Mar. 29, 2022) ("[T]his argument is contained entirely within a footnote to the Objections… and '[a] footnote is the wrong place for substantive arguments on the merits of a motion[.]'" (citation omitted)). Second, the supposed evidence was not part of the City's legislative record. Finally, the City stipulated at the August 9, 2022 status conference that this matter would proceed on the parties' briefs without discovery or the submission of evidence (other than the Plaintiffs' verification affidavit Doc. 3-1)).

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply Brief has been furnished to JASON R. TEAL, Esquire [jteal@coj.net], CRAIG D. FEISER, Esquire [cfeiser@coj.net]; MARY MARGARET GIANNINI, Esquire [MGiannini@coj.net]; and to GABRIELLA YOUNG, Esquire [GCYoung@coj.net], 117 West Duval Street, Suite 480, Jacksonville, Florida 32202, via the CM/ECF system this 16th day of November, 2022.

           BENJAMIN, AARONSON, EDINGER
           & PATANZO, P.A.

| | |
|---|---|
| | /s/ Gary S. Edinger |
| DANIEL R. AARONSON, Esquire | GARY S. EDINGER, Esquire |
| Florida Bar No.: 314579 | Florida Bar No. 0606812 |
| JAMES S. BENJAMIN, Esquire | 305 N.E. 1st Street |
| Florida Bar No.: 293245 | Gainesville, Florida 32601 |
| 1700 East Las Olas Blvd., Suite 202 | (352) 338-4440  (Fax) (352) 337-0696 |
| Ft. Lauderdale, Florida 33301 | GSEdinger12@gmail.com |
| (954) 779-1700 (Fax) (954) 779-1771 | |
| sexlaw@bellsouth.net | |
| danaaron@bellsouth.net | |

*Attorneys for Plaintiffs*